FILED
03/12/2025
Lisa Kallio
CLERK
Lewis & Clark County District Court
STATE OF MONTANA
By: Helen Coleman
DV-25-2025-0000133-IJ
Menahan, Mike
1.00

Chad E. Adams
Browning, Kaleczyc, Berry & Hoven, P.C.
800 N. Last Chance Gulch, Suite 101
P.O. Box 1697
Helena, MT 59624
Telephone: (406) 443-6820
Facsimile: (406) 443-6883
chad@bkbh.com

Attorneys for Montana Municipal Interlocal Authority

MONTANA FIRST JUDICIAL DISTRICT COURT, LEWIS AND CLARK COUNTY

| | |
|---|---|
| MONTANA MUNICIPAL INTERLOCAL AUTHORITY,<br><br>Plaintiff,<br>v.<br><br>MONTANA STATE FUND, AND MARSH MCLENNAN AGENCY.<br><br>Defendants. | Case No. ADV-25-2025-0000133-IJ<br><br>Presiding Judge: Hon. Mike Menahan<br><br>**COMPLAINT, DEMAND FOR JURY TRIAL, AND REQUEST FOR INJUNCTIVE RELIEF** |

Plaintiff Montana Municipal Interlocal Authority ("MMIA"), by and through its counsel of record, asserts this Complaint, Demand for Jury Trial, and Request for Injunctive Relief for actions by Montana State Fund ("MSF"), and its broker, Marsh McLennan Agency, and for injunctive relief, monetary damages, and for other relief set forth in this Complaint.

**PARTIES**

1. MMIA is a is a self-insurance plan created by Montana cities and towns pooling resources pursuant to the Interlocal Cooperation Act, Mont. Code Ann. § 7-11-101 *et seq*.

2. MSF is a non-profit and independent public corporation created under §39-71-2315.

3. Marsh McLennan Agency is a foreign limited liability company conducting business in the State of Montana.

//

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to Mont. Code Ann., § 3-5-302(1).

5. Venue is proper in this Court pursuant to Mont. Code Ann. §25-2-122(1)(b) because the parties are located in Lewis and Clark County, Montana.

**MSF BACKGROUND**

6. MSF was created by the Montana Legislature as the guaranteed market for the state, which means MSF is "required to insure any employer in this state who requests to insure their liability for workers' compensation and occupational disease coverage and that may not refuse to provide coverage unless an employer or the employer's principals have defaulted on an obligation and the default remains unsatisfied." Mont. Code Ann. § 39-71-2312(5).

7. MSF was first established by the Montana Legislature to address issues with a failing workers' compensation system, known as the "Old Fund," for workers' compensation claims prior to July 1, 1990.

8. MSF was known as the "New Fund" for claims after July 1, 1990, and was implemented to help address the "Old Fund's" liability.

9. In 2003, the Montana Legislature changed the statutory scheme to state that MSF's policies were restricted to claims arising after July 1990.

10. After the 2003 amendments, the purpose of the State Fund is as follows:

> It is the intent and purpose of the state fund to allow employers an option to insure their liability for workers' compensation and occupational disease coverage with the state fund. The state fund must be neither more nor less than self-supporting. Premium rates must be set at least annually at a level sufficient to ensure the adequate funding of the insurance program, including the costs of administration, benefits, and adequate reserves, during and at the end of the period for which the rates will be in effect. In determining premium rates, the state fund shall make every effort to adequately predict future costs. When the costs of a factor influencing rates are unclear and difficult to predict, the state fund shall use a prediction calculated to be more than likely to cover those costs rather than less than likely to cover those costs. The prediction must take into account the goal of pooling risk and may not place an undue burden on employers that are not eligible for the tier with the lowest-rated premium for workers' compensation purposes.

Mont. Code Ann. § 39-71-2311.

11. MSF currently exists as a nonprofit, independent public corporation.

## FACTUAL BACKGROUND

12. MMIA is comprised of a number of cities and towns, and two consolidated city/county governments from around Montana ("Members"), and one of its purposes is to administer workers' compensation benefits for its Members.

13. Members are signatories to an agreement known as the "Interlocal Agreement" in which the Members can participate in the MMIA's Workers' Compensation Program. This Program provides workers' compensation services including claims adjusting and claims handling.

14. Included among MMIA's membership are the following Members: Bozeman, Great Falls, Missoula, Whitefish and Butte Silver Bow (the "Municipalities").

15. Upon information and belief, early in 2023, a broker, on behalf of MSF, Marsh McLennan Agency ("Marsh McLennan") began approaching some or all of the Municipalities offering them a heavily discounted rate to join the MSF workers' compensation program.

16. The Municipalities did not seek out MSF for a new bid, and MSF, through its broker, approached the Municipalities without a request by the Municipalities to do so.

17. Upon information and belief, MSF and its broker offered the Municipalities a severely discounted rate to join the MSF program at a rate much lower than other participants in the MSF program received. Current MSF policyholders are not receiving this pricing benefit and are therefore subsidizing the grossly reduced rates and anticipated claims expected from the Municipalities.

18. The Board of Directors of MSF is required to set rates "at amounts sufficient, when invested, to carry the estimated cost of all claims to maturity, to meet the reasonable expenses of conducting the business of the state fund, and to amass and maintain an excess of surplus over the amount produced by the national association of insurance commissioners' risk-based capital requirements for a casualty insurer." Mont. Code Ann. § 39-71-2330(1).

19. MSF, through its broker, is specifically targeting MMIA's members in an attempt to injure MMIA by undercutting premium prices to the point that standard industry underwriting practices show that MSF will lose money on these policies for the foreseeable future, which means MSF's other policyholders will be negatively impacted in the form of either higher rates charged by MSF or a reduced dividend issued by MSF.

20. Upon information and belief, Marsh McLennan and MSF issued a proposal to the Municipalities that was inconsistent with the actual cost of administering and underwriting workers' compensation benefits. The underwriting on these policies is inconsistent with industry standards and practices, is written at a loss, and is contrary to Montana and federal law. By targeting MMIA members, MSF and Marsh McLennan are creating a monopoly in Montana's workers' compensation insurance market.

21. MSF purposefully failed to obtain and review prior loss data from the Municipalities prior to setting rates for its workers' compensation insurance, which is a deviation from standard insurance practices. MSF's purposeful failure to review and consider prior loss data resulted in rates which, while appealing to Municipalities, will inevitably result in losses to MSF which will have to be borne by their other policyholders and will result in significantly increased rates to the Municipalities in the future.

22. MSF is subject to the relevant provisions of Title 33 pursuant to MCA§ 39-71-2375.

23. Marsh McLennan is an insurance producer as defined by Mont. Code Ann. § 33-17-102(10) and is subject to the relevant provisions of Title 33.

**COUNT ONE – VIOLATION OF THE MONTANA UNFAIR TRADE PRACTICES ACT ( MONT. CODE ANN. §§ 33-18-201, ET. SEQ., 210**

24. MMIA restates the above allegations as though fully set forth here.

25. MSF is engaged in the business of administering workers' compensation benefits within the State of Montana. Marsh McLennan is MSF's broker.

26. MSF has not complied with its obligations under Mont. Code Ann. § 39-71-2311 and principles of actuarial soundness commonly used in the insurance industry in setting rates with the Municipalities or any additional MMIA Members it is seeking to solicit.

27. Upon information and belief, MSF and Marsh McLennan are, as an inducement to purchase insurance, paying, allowing, or giving or offering to pay, allow, or give, directly or indirectly, a rebate, discount, abatement, credit, or reduction of the premium named in the insurance policy, in violation of Mont. Code Ann. § 33-18-210(1)(a).

28. As a result, MSF's workers' compensation policies issued to the Municipalities will result in significant losses to MSF, which will be borne in significantly increased rates to the Municipalities in the future or by other policyholders with MSF in the form of increased rates or reduced dividends.

29. MMIA and a majority of its Members in the Workers Compensation Program are being injured by Defendants' inducements, rebates, discounts, abatements, credits, or reduction of premiums.

30. MMIA damages include, but are not limited to, all damages which under the circumstances may be just, and in a sum to be proven at trial.

**COUNT TWO -- PRICE DISCRIMINATION - MONT. CODE ANN. § 30-14-901 and ROBINSON-PATMAN ACT**

31. MMIA restates the above allegations as though fully set forth here.

32. Defendants unlawfully price charged the Municipalities with commodities of like grade and quality which in effect discriminated against MMIA because it substantially lessened competition.

33. Defendants unlawful price charging created, or will create, a monopoly that has injured and prevented competition for MMIA.

34. Defendants intend to recoup its investment after its below-cost investments.

35. MMIA damages include, but are not limited to, all damages which under the circumstances may be just, and in a sum to be proven at trial.

**COUNT THREE -- VIOLATION OF THE SHERMAN ANTITRUST ACT**

36. MMIA restates the above allegations as though fully set forth here.

37. Defendants possess or will possess the monopoly power in the workers' compensation insurance market.

38. Defendants have a willful acquisition or maintenance of the monopoly power in the workers' compensation market.

39. MMIA has suffered an antitrust injury.

40. MMIA damages include, but are not limited to, all damages which under the circumstances may be just, and in a sum to be proven at trial.

**COUNT FOUR --INTENTIONAL INTERFERENCE WITH BUSINESS CONTRACT**

41. MMIA restates the above allegations as though fully set forth here.

42. Defendants intentionally or willfully interfered with MMIA's contracts with the Municipalities and other Members.

43. Defendants' interference was calculated to cause damage to MMIA in its business.

44. The intentional interference was done for the unlawful purpose of causing damage or loss without justifiable cause.

45. MMIA damages include, but are not limited to, all damages which under the circumstances may be just, and in a sum to be proven at trial.

**COUNT FIVE -- INTENTIONAL INTERFERENCE WITH PROSPECTIVE BUSINESS ECONOMIC ADVANTAGE**

46. MMIA restates the above allegations as though fully set forth here.

47. Defendants intentionally or willfully interfered with MMIA's contractual or non-contractual relationship with the Municipalities and other Members.

48. Defendants' interference was calculated to cause damage to MMIA in its business.

49. The intentional interference was done for the unlawful purpose of causing damage or loss without justifiable cause.

50. MMIA damages include, but are not limited to, all damages which under the circumstances may be just, and in a sum to be proven at trial.

### COUNT SIX – REQUEST FOR INJUNCTIVE RELIEF

51. MMIA restates the above allegations as though fully set forth here.

52. Upon information and belief, MSF and Marsh McLennan are continuing to solicit MMIA's Members by offering inducements, rebates, discounts, abatements, credits, or reduction of premiums, in violation of Montana law.

53. In the absence of preliminary injunctive relief, MMIA is likely to suffer irreparable harm.

54. MMIA cannot and does not offer inducements, rebates, discounts, abatements, credits, or reduction of premiums. Instead, MMIA offers rates consistent with industry standards and practices and consistent with Montana law, which tips the balance of equities in MMIA's favor.

55. It is in the public interest to enjoin MSF and Marsh McLennan from further violations of Montana law to avoid a monopoly in Montana's workers' compensation market.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief from the Court as follows:

1. Imposition of any and all direct and consequential damages to MMIA caused by Defendants' conduct;

2. Issuance of a Temporary Restraining Order under Mont. Code Ann, § 27-19-314 enjoining Defendants from their monopolistic practices of selling policies to MMIA's Members in violation of Montana law;

3. A date and time for an Order to Show Cause Hearing to be held on MMIA's request for a Preliminary Injunction;

4. Costs and attorney's fees; and

5. Any further relief the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury of all issues triable by jury.

DATED this 12th day of March, 2025.

BROWNING, KALECZYC, BERRY & HOVEN, P.C.

By   /s/  Chad E. Adams
      Chad E. Adams

Attorneys for Montana Municipal Interlocal Authority