IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
HELENA DIVISION

| | |
|---|---|
| MONTANA MUNICIPAL INTERLOCAL AUTHORITY,<br><br>Plaintiff,<br><br>v.<br><br>MONTANA STATE FUND and MARCH MCLENNAN AGENCY,<br><br>Defendant. | 6:25-CV-35-BMM<br><br><br><br>ORDER |

## INTRODUCTION

Plaintiff Montana Municipal Interlocal Authority ("MMIA") filed a complaint in the Montana First Judicial District Court, Lewis and Clark County on March 12, 2025, against Defendants Montana State Fund ("MSF") and Marsh McLennan Agency ("Marsh") (collectively "Defendants"). MSF removed the case to the District of Montana. (Doc. 1.) Defendants filed respective motions to dismiss on April 23, 2025. (*See* Doc. 8; Doc. 10.) MMIA opposes the motions. (Doc. 15; Doc.

1

16.) MMIA filed a motion for a Temporary Restraining Order ("TRO") against MSF on June 4, 2025. (Doc. 30.) MSF opposes the motion. (Doc. 34.) The Court held a hearing on June 9, 2025. (Doc. 38.)

**FACTUAL BACKGROUND**

Montana cities and towns created MMIA as a self-insurance plan that pools resources under the Interlocal Cooperation Act, Mont. Code Ann. § 7-11-101 et seq. (Doc. 4, ¶ 1.) MMIA's membership includes several municipalities, such as Bozeman, Great Falls, Missoula, Whitefish, and Butte-Silver Bow, that participate in MMIA's Workers' Compensation Program to receive services like claims adjusting and handling. (*Id.*, ¶¶ 13–15.) Marsh, acting as a broker for MSF, approached these municipalities in early 2023. Marsh presented offers to join the MSF workers' compensation program at significantly discounted rates without any solicitation by the municipalities. (*Id.*, ¶¶ 15–17.)

The discounted rates offered by MSF and its broker were substantially lower than those available to other MSF policyholders. These substantial discounts raised concerns for MMIA that current policyholders would be subsidizing these reduced rates. (*Id.*, ¶ 18.) MMIA alleges that this pricing strategy deviates from standard industry underwriting practices. (*Id.*, ¶¶ 19, 21.) MMIA contends that the discounted pricing is expected to result in financial losses for MSF. These financial losses

2

ultimately could impact other policyholders through increased rates or reduced dividends. (*Id.*) MMIA also claims that MSF seeks to undermine MMIA by creating a monopoly in Montana's workers' compensation insurance market. MMIA asserts that MSF failed to review prior loss data from the municipalities before setting these discounted rates. (*Id.*, ¶¶ 19, 21, 23.)

## LEGAL STANDARD

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A motion to dismiss under Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint under this pleading standard. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Dismissal proves appropriate where the complaint fails to state a claim upon which relief can be granted. *Mendiondo v. Centinela Hospital Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). A court may dismiss a complaint "based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988).

A complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face to survive a Rule 12(b)(6) motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937 (2009). A claim proves plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged." *Id.* at 678. The plausibility standard does not require probability, but "asks for more than sheer possibility that defendant has acted unlawfully." *Id.* A court must "take[] as true and construe[] in the light most favorable to plaintiffs" all factual allegations set forth in the complaint. *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) (internal quotation marks omitted).

## DISCUSSION

MSF removed this case to the District of Montana based on federal question jurisdiction. (Doc. 1.) MMIA asserts two claims under federal law: (1) Count Two – the Robinson-Patman Act; and (2) Count Three – the Sherman Antitrust Act. (*See* Doc. 4, ¶¶31– 40.) The Court will dismiss those two claims for the reasons stated below. The Court declines to address the remaining claims due to lack of pendent jurisdiction. "Certainly, if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

## I. Whether the McCarran-Ferguson Act Prohibits Application of the Sherman Act and the Robinson-Patman Act Claims Against Defendants

MMIA alleges that Defendants engaged in unlawful pricing discrimination in violation of the Robinson-Patman Act and monopolistic practices in violation of

4

the Sherman Act. (Doc. 4.) Defendants argue that the McCarran-Ferguson Act prohibits MMIA's claims under both the Robinson-Patman and Sherman Acts. (Doc. 9 at 25–30; Doc. 11 at 14–15; Doc. 23 at 8–9; Doc. 28 at 5–6.)

The McCarran-Ferguson Act directs that the Sherman Act and Clayton Act "shall be applicable to the business of insurance to the extent that such business is not regulated by State Law." 15 U.S.C. § 1012. The Robinson-Patman Act, codified as 15 U.S.C. § 13, amended § 2 of the Clayton Act. Pub. L. No 74-692, 49 Stat. 1526 (1936). A Robinson-Patman Act claim also can be a Clayton Act claim in the insurance context and thereby be subject to the McCarran-Ferguson Act. *See Feinstein v. Nettleship Co. of Los Angeles*, 714 F.2d 928 (9th Cir. 1983); *see also Rebel Oil Co. v. Atl. Richfield Co.*, 51 F.3d 1421, 1444, 47 (9th Cir. 1995). The validity of MMIA's Sherman Act and Robinson-Patman Act claims depends on whether the McCarran-Ferguson Act prohibits these claims. The Court will analyze whether Montana's state insurance laws regulate Defendants' business of insurance actions to such a degree that the McCarran-Ferguson Act prohibits the application of the Sherman Act and Robinson-Patman Act claims that Plaintiff alleges.

The Ninth Circuit in *Freier v. New York Life Ins. Co.* established that Montana state law generally regulates workers' compensation insurance, and, therefore, workers' compensation insurance falls within the McCarran-Ferguson

5

Act's definition of "business of insurance." 679 F.2d 780, 782–83 (9th Cir. 1982). MMIA contends, however, that MSF's unique status as Montana's Plan Three insurer exempts it from the Montana Insurance Code to such a degree that it cannot be considered regulated by Montana state law as contemplated by the McCarran-Ferguson Act. (Doc. 15 at 26–29.)

Montana law delineates three distinct workers' compensation insurance plans from which employers can elect to provide coverage for their employees. *See* Mont. Code Ann. §§ 39-71-2101 et seq.; 39-71-2201 et seq.; 39-71-2311 et seq. These plans are known as Plan One, Plan Two, and Plan Three. Each plan provides specific requirements and mechanisms for providing workers' compensation benefits. Plan One regulates self-insurers, such as MMIA. *See* Mont. Code Ann. §§ 39-71-2101 et seq. Plan Two regulates private insurance. *See* Mont. Code Ann. §§ 39-71-2201 et seq. Plan Three regulates the State Compensation Insurance Fund through which MSF operates. *See* Mont. Code Ann. §§ 39-71-2311 et seq. The State Compensation Insurance Fund must be self-supporting, with premium rates set annually to ensure adequate funding for the insurance program, including administration costs, benefits, and reserves. *Id.* The State Compensation Insurance Fund aims to pool risk without placing an undue burden on employers not eligible for the lowest-rated premium tier. *Id.* Unnecessary surpluses may be refunded

through dividends, and the board of directors may implement multiple rating tiers and assess an expense constant or minimum premium to maintain solvency. *Id.*

MMIA provides two examples of how Montana state regulations allegedly exempt Defendants' actions in a manner decisive to their consideration under the McCarran-Ferguson Act. MMIA first notes that the Insurance Commissioner must issue and continuously renew MSF's certificate of authority. (*Id.* 27–28.) Montana law also prohibits the Insurance Commissioner from suspending or revoking MSF's certificate. (*Id.*) MMIA contends that these requirements render MSF only "quasi-regulat[ed]" under Montana law. (*Id.*); s*ee also* Mont. Code Ann. § 39-71-2375(2)(a). MMIA next points to the fact that Defendants allegedly actively solicited municipal contracts in a predatory manner, not regulated by the Montana Insurance Code (Doc. 15, 26–29; Doc. 16 at 13–14, 18–19.) The Court will address each point in turn.

### A. Whether MSF is Subject to State Regulation

MMIA correctly notes that MSF remains exempt from the process of certificate issuance, renewal, and revocation to which other insurers remain subject. MMIA fails to acknowledge, however, that as the Plan Three insurer, MSF remains subject to alternative regulations that provide the Insurance Commissioner, Governor, and the Montana legislature with regulatory authority over MSF and its rates. Mont. Code Ann. § 39-71-2375. For example, subsection

7

(5)(a) of the Montana insurance code provides that if MSF's risk-based capital falls below acceptable levels as defined in Mont. Code Ann. § 33-2-1902, the Insurance Commissioner "shall issue a report to the governor, the state fund board of directors, and to the legislature." Mont. Code Ann. § 39-71-2375(5)(a). Under certain conditions, the Insurance Commissioner's report "must include the state fund's corrective action plan, results of any examination or analysis by the commissioner, and any corrective orders issued by the commissioner." *Id.*

Subsection (5)(b) further authorizes the Insurance Commissioner to initiate supervision proceedings under Title 33, chapter 2, part 13 if MSF fails to comply with any lawful order of the Insurance Commissioner. Mont. Code Ann. § 39-71-2375(5)(b). In fact, the Insurance Commissioner may institute rehabilitation proceedings under Title 33, chapter 2, part 13 if MSF fails to comply with the Insurance Commissioner's lawful supervision order. Mont. Code Ann. § 39-71-2375(5)(b). The Insurance Commissioner's mandate to initiate supervision or rehabilitation proceedings against MSF, if necessary, provides an alternative form of regulation to certificate issuance. This fact alone, however, does not render MSF quasi-regulated.

The Court recognizes that MSF remains subject to a different regulatory scheme than the one provided for Plan Two insurers. The Court also recognizes, however, that MSF also possesses a unique obligation to insure any employer

requesting coverage. Mont. Code Ann. § 39-71-2313(2). A difference in both obligations and regulatory oversight mechanisms does not demonstrate, in itself, that "Montana has not completely and affirmatively adopted legislation regulating MSF," as MMIA alleges. (Doc. 15 at 23.)

On the contrary, Mont. Code Ann. § 39-71-2375(1) states that ". . . except as provided in this section, [MSF] is subject to the provisions in Title 33 that are generally applicable to authorized workers' compensation insurers in this state and the provisions of Title 39, chapter 71, part 23." The Court does not find the exceptions created for MSF in Mont. Code Ann. § 39-71-2375 sufficient to eliminate MSF from consideration under the McCarran-Ferguson Act. Montana has developed a comprehensive regulatory scheme for its insurance industry, and MSF stands subject to much of that regulation. *See* Mont. Code Ann. § 39-71-2375(1).

### B. Whether Montana State Law Regulates Defendants' Use of Rates to Solicit Business

MMIA alleges that Defendants used low rates to discriminatorily undercut their competition, thereby willfully establishing a monopoly and creating an anti-competitive environment that harmed MMIA. (Doc. 4; Doc. 15 at 26–29; Doc. 16 at 13–14, 18–19.) "In assessing whether a party has stated a claim upon which relief can be granted, a court must take all allegations of material fact as true and

9

construe them in the light most favorable to the nonmoving party; but 'conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal.'" *Turner v. City and County of San Francisco* 788 F.3d 1206, 1210 (9th Cir. 2015) (citing *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009). The Court finds that Montana state law regulates Defendants' conduct regarding alleged discriminatory rate setting and proactive solicitation of insurance business to establish a monopoly.

Two cases prove instructive in determining what qualifies as regulation of insurance under the McCarran-Ferguson Act. The Tenth Circuit in *Commander Leasing Co. v. Transamerica Title Ins. Co.* answered in the affirmative about whether the McCarran-Ferguson Act prohibited the application of Sherman and Robinson-Patman Act claims in the Colorado title insurance and title abstracting services marketplace. 477 F.2d 77 (10th Cir. 1973). The plaintiffs alleged that they had been overcharged for title insurance due to noncompetitive and monopolistic practices by Transamerica Title Insurance Company and other defendants. *Id.* at 79. The plaintiffs sought five claims for relief based on federal antitrust and price-fixing laws, as well as state law claims, and sought injunctive relief. *Id.* at 80.

The district court dismissed the case, finding that the business of title insurance was considered "insurance" under the McCarran-Ferguson Act, and, therefore, exempted from federal antitrust laws because Colorado regulated

insurance. *Id.* at 81. The district court dismissed the remaining claims based on Colorado law for lack of jurisdiction. *Id.* The Tenth Circuit affirmed.

Colorado enacted comprehensive statutes regulating the title insurance business, which were sufficient to invoke the McCarran-Ferguson Act's exemption from federal antitrust laws. *Id.* at 83–87. The Tenth Circuit noted that the Colorado Title Insurance Code, enacted in 1969, provided a detailed regulatory framework for both domestic and foreign title insurance companies, including rate regulation like that for casualty and surety insurance. *Id.* at 83. The Tenth Circuit further emphasized that both domestic and foreign title insurance companies are subject to the general regulatory powers of the State Insurance Commissioner and other statutes addressing unfair competition and trade practices. *Id.* at 83–84. The Tenth Circuit ultimately rejected the plaintiffs' claims that Colorado's regulation was a "mere sham and pretense" and not "effective" or "meaningful." *Id.* The Tenth Circuit emphasized that the McCarran-Ferguson Act does not mandate a uniform standard of regulation across states, instead leaving the specifics of regulation to each state's discretion. *Id.* at 84.

The Ninth Circuit in *Feinstein v. Nettleship Co. of Los Angeles* analyzed the application of the McCarran-Ferguson Act. 714 F.2d 928 (9th Cir. 1983). *Feinstein* involved a group of physicians who filed an antitrust lawsuit against an insurance agent and several insurance carriers. *Id.* at 929–30. The carriers provided medical

11

malpractice insurance to members of the Los Angeles County Medical Association ("LACMA") through an exclusive agreement with Nettleship Company, which acted as the sole agent for LACMA. *Id.* The physicians alleged that this arrangement led to monopolization, price-fixing, and other antitrust violations, as it required doctors to be members of LACMA to obtain insurance through Nettleship, although they were free to purchase insurance elsewhere. *Id.*

The Ninth Circuit affirmed the district court's grant of summary judgment in favor of the defendants. *Id.* at 935. The Ninth Circuit determined that the agreement between the LACMA and the insurers constituted the "business of insurance" because it involved the allocation and spreading of risk, which is a primary characteristic of insurance. *Id.* at 932 (citing *Group Life & Health Insurance Co. v. Royal Drug Co.,* 440 U.S. 205, 212–13 (1979)). The Ninth Circuit noted that the state of California regulated the practice as part of an extensive regulatory scheme with jurisdiction over all rating practices of insurers. *Id.* at 933 (internal citations omitted).

The Ninth Circuit also highlighted that a monopolization claim under the Sherman Act requires not only the possession of monopoly power but also the willful acquisition or maintenance of that power. *Id.* at 934. The Ninth Circuit concluded that the plaintiffs' theory, based solely on the oppressive nature of monopoly, did not constitute a claim of an antitrust violation. *Id.* at 935. The Ninth

12

Circuit reasoned that the defendants' conduct remained exempt from antitrust laws under the McCarran-Ferguson Act. *Id.*

Montana state law regulates MSF's workers' compensation rates, and these rates remain subject to review by the Insurance Commissioner. *See* Mont. Code Ann. § 33-16-1001 to § 33-16-1036; § 33-16-101 to § 33-16-405. The Montana Insurance Code establishes the conditions under which the Insurance Commissioner may determine MSF's rates to be excessive, inadequate, and discriminatory. Mont. Code Ann. § 33-16-1021(2)(b); § 33-16-1021(3); § 33-16-1021(4). Mont. Code Ann. § 33-16-1021(3)(b) provides that a rate may be determined inadequate if "the rate is unreasonably low and the use of the rate by the insurer has had or, if continued, will tend to create a monopoly in the market." Defendants' alleged discriminatory rate setting and monopolistic activities fall under the regulatory purview of this Montana state law. *See Commander Leasing Co.*, 477 F.2d at 83–84; *Feinstein*, 714 F.2d at 933. The remaining question concerns whether Defendants' alleged proactive solicitation of contracts constitutes the "business of insurance" as regulated by Montana state law.

To determine whether a particular practice constitutes the "business of insurance" under the McCarran-Ferguson Act requires a three-step inquiry: (1) a transfer of a policyholder's risk; (2) whether the practice is an integral part of the policy relationship between the insurer and the insured; and (3) whether the

13

practice is limited to the insurance industry. *Union Labor Life Ins. Co. v. Pireno*, 458 U.S. 119, 129, (1982) (citing *Group Life.*, 440 U.S. 205). Courts have held that the use of agents to market and solicit for insurance policies falls within the "business of insurance" covered by McCarran-Ferguson. *See e.g.*, *Gerling Glob. Reinsurance Corp. of Am. v. Low*, 240 F.3d 739, 744 (9th Cir. 2001); *Feinstein*, 714 F.2d at 932–33.

The U.S. Supreme Court discussed the scope of the "business of insurance" exception of McCarran-Ferguson in *SEC v. Nat'l Sec., Inc.* and determined that the use of insurance agents falls under the "business of insurance." 393 U.S. 453, 459–60 (1969) The U.S. Supreme Court reasoned that "[t]he statute did not purport to make the States supreme in regulating all the activities of insurance companies; its language refers not to the persons or companies who are subject to state regulation, but to laws 'regulating the business of insurance.'" *Id.* The U.S. Supreme Court noted further that federal law regulates insurance companies in many scenarios but the exception under the McCarran-Ferguson Act applied to "fixing of rates . . . selling and advertising of policies . . . and the licensing of companies and their agents. *Id.* at 460 (internal citations omitted); *see also Gerling*, 240 F.3d at 744.

The question boils down to whether Montana state law regulates MSF's alleged solicitation of business. MMIA acknowledges that Marsh qualifies as an "insurance producer" as defined by Mont. Code. Ann. § 33-17-102(10) and "is

14

subject to the relevant provisions of Title 33." (Doc. 4 at ¶ 23.) Montana law regulates the selling of insurance under the provisions of Mont. Code Ann. Title 33, Section 17, and Title 33 more broadly. Montana law also explicitly grants to MSF the right to "contract with licensed resident insurance producers" and "perform all functions and exercise all powers of a private insurance carrier that are necessary, appropriate, or convenient for the administration of the state fund." Mont. Code Ann. §§ 39-71-2316(l); 39-71-2316(p). The Court finds that Montana law regulates Defendants' alleged solicitation as a business of insurance covered by the McCarran-Ferguson Act.

## CONCLUSION

The Court finds the McCarran-Ferguson Act prohibits Plaintiff's Sherman Act and Robinson-Patman Act claims, as these claims allege activity regulated by Montana state law as part of the business of insurance. The Court declines to address the remaining claims due to lack of pendent jurisdiction and also dismisses the state law claims. *Gibbs*, 383 U.S. at 726.

## ORDER

Accordingly, **it is ORDERED** that MSF's and Marsh's Motions to Dismiss (Doc. 8; Doc. 10) are **GRANTED**.

1. MMIA's Complaint is dismissed without prejudice.

2. MMIA's motion for Temporary Restraining Order (Doc. 30) is **DENIED** as the Court lacks subject matter jurisdiction. The Clerk of Court is directed to close this case.

DATED this 27th day of June, 2025.

*/s/ Brian Morris*

Brian Morris, Chief District Judge
United States District Court